**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **BOARD OF TRUSTEES,**<br>  **SHEET METAL WORKERS'**<br>  **NATIONAL PENSION FUND,**<br><br>**BOARD OF TRUSTEES,**<br>  **INTERNATIONAL TRAINING**<br>  **INSTITUTE FOR THE SHEET METAL**<br>  **AND AIR CONDITIONING INDUSTRY,**<br><br>**BOARD OF TRUSTEES,**<br>  **NATIONAL ENERGY MANAGEMENT**<br>  **INSTITUTE COMMITTEE,**<br><br>**BOARD OF TRUSTEES,**<br>  **SHEET METAL OCCUPATIONAL**<br>  **HEALTH INSTITUTE TRUST FUND, and**<br><br>**BOARD OF TRUSTEES,**<br>  **NATIONAL STABILIZATION AGREEMENT**<br>  **OF THE SHEET METAL INDUSTRY**<br>    8403 Arlington Boulevard, Suite 300<br>    Fairfax, VA 22031<br><br>         **Plaintiffs,**<br>  **v.**<br><br>**METROPOLITAN CONSTRUCTION**<br>  **SYSTEMS INC., and**<br>    234 Union Avenue<br>    Holbrook, NY 11741<br><br>**HIGHPOINT CIRCLE HOLDINGS, LLC**<br>    36 Liberty Street<br>    West Hampton Beach, NY 11978<br><br>    SERVE: Helen Martin<br>           21 Highpoint Circle, Unit #203<br>           Naples, FL 32103<br><br>         **Defendants.** | **Civil Action No. 1:19-cv-77** |

## COMPLAINT

Plaintiffs, the separate and individual Boards of Trustees (collectively, "Trustees") for the Sheet Metal Workers' National Pension Fund ("NPF"), the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the National Energy Management Institute Committee ("NEMIC"), the Sheet Metal Occupational Health Institute Trust Fund ("SMOHIT"), and the National Stabilization Agreement of Sheet Metal Industry ("SASMI," and collectively with NPF, ITI, NEMIC and SMOHIT, the "Funds"), hereby complain of Defendants Metropolitan Construction Systems, Inc. ("Metropolitan") and Highpoint Circle Holdings, LLC ("Highpoint," and collectively with Metropolitan, "Defendants") as follows:

### Introduction

1.      This action is brought against Metropolitan under Sections 502 and 4301 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132 and 1451, to recover delinquent withdrawal liability, delinquent contributions, interest, liquidated damages, audit fees, and attorneys' fees and costs now due and hereafter due, through the date of judgment, by the Defendants to the Funds pursuant to ERISA §§ 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2) and 1145, the collective bargaining agreement, the Trust Documents governing the Funds, and Section 301 of LMRA.  Highpoint is also alleged to be jointly-and-severally liable for all amounts arising out of Metropolitan's withdrawal from the Fund because Highpoint is under common control with Metropolitan.

### Jurisdiction and Venue

2.      This Court has subject matter jurisdiction under ERISA §§ 502(e), 502(f), and 4301(c), 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c); Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a); and 28 U.S.C. § 1331.

2

3.      Venue lies in this Court under ERISA §§ 502(e)(2) and 4301(d), 29 U.S.C. §§ 1132(e)(2) and 1451(d), which provide that an action may be brought in the district where the plan is administered.  In this case, the Funds are administered in Fairfax, Virginia.  Accordingly, venue is proper in this District.

4.      Personal jurisdiction exists over Defendants pursuant to ERISA §§ 502(e)(2) and 4301(d), 29 U.S.C. §§ 1132(e)(2) and 1451(d), which provide that while an action may be filed in the district where the plan is administered, process may be served in any other district where a defendant resides or may be found.

**The Parties**

5.       NPF is an employee pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and a multiemployer plan within the meaning of ERISA § 3(37), 29 U.S.C. § 1002(37), established and maintained for the purpose of providing pension benefits to eligible participants.  NPF is, and at all times material herein has been, a jointly-administered trust fund established pursuant to LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5).  NPF is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.  NPF's Trustees are fiduciaries of NPF within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to ERISA §§ 502(g)(2) and 4301(a)(1), 29 U.S.C. §§ 1132(g)(2) and 1451(a)(1).

6.      ITI is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and a multiemployer plan within the meaning of ERISA § 3(37), 29 U.S.C. § 1002(37), established and maintained for the purpose of providing apprenticeship training and educational benefits to eligible employees.  ITI is, and at all times material herein has been, a

jointly-administered trust fund established pursuant to LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5). ITI is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031. ITI's Trustees are fiduciaries of ITI within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to ERISA §§ 502(g)(2) and 4301(a)(1), 29 U.S.C. §§ 1132(g)(2) and 1451(a)(1).

7.      NEMIC is a not-for-profit joint labor-management organization established pursuant to the Labor Management Cooperation Act of 1978 and LMRA § 302(c)(6). 29 U.S.C. § 186(c)(6), sponsored by the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART") and the Sheet Metal and Air Conditioning Contractors' National Association ("SMACNA"), and funded by contributions under various collective bargaining agreements. NEMIC is located at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

8.      SMOHIT is a joint labor-management fund established under LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5) serving the sheet metal industry, and funded by contributions under various collective bargaining agreements. SMOHIT is located at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

9.      SASMI is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and a multiemployer plan within the meaning of ERISA § 3(37), 29 U.S.C. § 1002(37). SASMI is, and at all times material herein has been, a jointly-administered trust fund established pursuant to LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5). SASMI is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031. SASMI's Trustees are fiduciaries of SASMI within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and are empowered

to bring this action pursuant to ERISA §§ 502(g)(2) and 4301(a)(1), 29 U.S.C. §§ 1132(g)(2) and 1451(a)(1).

10.    At all times relevant to this action, Metropolitan has been a corporation organized under the laws of the State of New York, and with its principal place of business at 234 Union Avenue, Holbrook, NY  11741.  Upon information and belief, Metropolitan is wholly-owned by Thomas K. Martin.  In this regard, Mr. Martin is registered with the State of New York as Metropolitan's Chief Executive Officer.

11.    At all times relevant to this action, Highpoint has been a limited liability company ("LLC") organized under the laws of the State of Florida, and with its principal place of business at 36 Liberty Street, West Hampton Beach, NY 11978.   Upon information and belief, Metropolitan is wholly-owned by Thomas K. Martin.  In this regard, Mr. Martin is registered with the State of Florida as the only Member of Highpoint's LLC that is authorized to manage and control the LLC.  Pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), which provides that process may be served in any district where a defendant resides or may be found, process may be served upon Highpoint in this action by serving its registered agent for service of process in the State of Florida, Helen Martin, who may be located at 21 Highpoint Circle, Unit #203, Naples, FL  34103.  Upon information and belief, Helen Martin is the mother of Thomas K. Martin.

## Factual Allegations in Support of Relief Sought

12.    Plaintiff incorporates the foregoing paragraphs as if fully stated herein.

13.    At all times relevant to this action, Metropolitan was a party to one or more collective bargaining agreements ("CBA") with the International Association of Sheet Metal,

Air, Rail and Transportation Workers, Local Union No. 28 (the "Union"), a labor organization representing employees in an industry affecting interstate commerce.

14.     The terms of its CBA obligated Metropolitan to, *inter alia*, make contributions to the Fund on behalf of its employees covered by the CBA.

15.     By letter dated November 7, 2017 (the "Notice and Demand"), NPF notified Metropolitan that NPF had determined that, effective on or about July 1, 2017, Metropolitan had effected a complete withdrawal from NPF within the meaning of ERISA § 4203(a)(2), 29 U.S.C. § 1383(a)(2).

16.     The Notice and Demand notified Metropolitan, pursuant to ERISA § 4202, 29 U.S.C. § 1382, that NPF had determined that Metropolitan owed withdrawal liability pursuant to ERISA § 4219(b)(1), 29 U.S.C. § 1399(b)(1).

17.     Specifically, pursuant to ERISA § 4211(c), 29 U.S.C. § 1391(c), the Notice and Demand informed Metropolitan that its withdrawal liability was $451,656.52, which, pursuant to ERISA § 4219(c), 29 U.S.C. § 1399(c), was payable in 48 quarterly payments of $13,587.82, with a final payment of $12,928.83.

18.     The Notice and Demand further notified Metropolitan that its first quarterly installment payment was due on or before December 1, 2017.

19.     Pursuant to ERISA § 4219(b)(2), 29 U.S.C. § 1399(b)(2), if Metropolitan had any dispute with the NPF's withdrawal liability assessment, it was required to, within 90 days after receipt of the Notice and Demand: (i) ask the NPF's Trustees to review any specific matter relating to the determination of its liability and the schedule of payments; (ii) identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to it; or

(iii) furnish any additional relevant information to the NPF's Trustees (collectively, "Request Review").

20.     Metropolitan did not Request Review at any time within 90 days of receipt of the Notice and Demand.

21.     Pursuant to ERISA § 4221(a)(1), 29 U.S.C. § 1401(a)(1), an employer must Request Review prior to initiating arbitration, which is the only means by which a dispute over a withdrawal liability assessment may be resolved.  If an employer does not first Request Review by the Fund, it cannot demand arbitration; and if it does not or cannot demand arbitration on a timely basis, the withdrawal liability assessment becomes final and binding.

22.     Accordingly, because Metropolitan did not Request Review within 90 days of the Notice and Demand, it waived its right to Request Review and to initiate arbitration, and the withdrawal liability assessment became final and binding.

23.     Metropolitan failed to make its first scheduled quarterly payment by December 1, 2017, and it has not made any payments to date.

24.     ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1), provides that for purposes of Title IV of ERISA, which includes MPPAA, "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer."

25.     In turn, ERISA § 4001(a)(14)(A) provides that "the determination of whether two or more persons are under 'common control' shall be made under regulations . . . which are consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under subsections (b) and (c) of section 414 of title 26 . . . ."

26.     The effect of this is that if one or more trades or businesses are under "common control," as that term is defined by regulations promulgated by the Department of the Treasury, they are considered a controlled group, and the entire controlled group is deemed the "employer" in any instances in which MPPAA uses that term.

27.     The relevant Treasury Regulation provides that one basis for establishing "common control" is a "brother-sister" relationship between companies, which:

> means two or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals, estates, or trusts own . . . a controlling interest in each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization.

26 C.F.R. § 1.414(c)-2(c)(1).

28.     That same regulation also defines a "controlling interest" to mean:

> In the case of an organization which is a corporation, ownership of stock possessing at least 80 percent of total combined voting power of all classes of stock entitled to vote of such corporation or at least 80 percent of the total value of shares of all classes of stock of such corporation.

26 C.F.R. § 1.414(c)-2(b)(2)(A)(i)

29.     Upon information and belief, both Defendants constitute a brother-sister relationship in that Thomas K. Martin owns at least an 80% interest in both Defendants.

30.     Because the Defendants are under common control, they are deemed a single employer for withdrawal liability purposes under ERISA and each of the Defendants is thereby jointly-and-severally liable for the withdrawal liability and related amounts incurred by any one of the Defendants.

31.     By letter addressed to Metropolitan dated February 21, 2018 (the "Delinquency Letter"), NPF notified Defendants that they were delinquent in their first installment payment

and would be in default, within the meaning of ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5), if they failed to cure the delinquency within 60 days of the date of the Delinquency Letter.

32.     Defendants failed to cure the delinquency within 60 days of receipt of the Delinquency Letter and have not cured the delinquency to date.

33.     By letter addressed to Metropolitan dated June 11, 2018 ("Demand Letter"), NPF notified Defendants that they owed the entire amount of the withdrawal liability, plus interest, liquidated damages, and attorneys' fees and costs.

34.     Defendants have not cured the total withdrawal liability delinquency to date.

35.     Additionally, pursuant to the CBA, Metropolitan is obligated to submit monthly remittance reports and fringe benefit contributions to each of the Funds, for all hours worked or paid on behalf of Metropolitan's employees who perform work covered by the CBA.

36.     Pursuant to the terms of the CBA, Metropolitan is obligated to abide by the terms and conditions of the Trust Agreements establishing the Funds, including any amendments thereto and policies and procedures adopted by the Board of Trustees (collectively, the "Trust Documents").

37.     Payments due to the Funds are calculated separately for each Fund on remittance reports required to be prepared monthly by each contributing employer.  This is a self-reporting system and the Funds rely on the honesty and accuracy of the employers in reporting hours worked and paid, and in reporting the contributions owed for work by employees.

38.     Without the information in the remittance reports, the Funds cannot determine the entire amount of the monthly contributions due to the Funds or the employees' eligibility for benefits.

39.     Pursuant to the terms of the CBA and Trust Documents, the completed remittance reports and accompanying contribution payments are due to the Funds no later than the twentieth day after the end of each month during which covered work was performed, and are delinquent if received thereafter.

40.     At all times relevant to this action, the Trust Documents provided that the Trustees have the right to audit any employer that participates in the Funds for the purposes of, *inter alia*, assuring the accuracy of reports and contributions and compliance with applicable law and the Trust Documents.

41.     The Trust Documents provide that, if a payroll audit reveals that insufficient contributions have been made, the employer is required to pay all fees, including audit fees and expenses, interest, liquidated damages, as well as attorneys' fees incurred in collecting those fees and expenses.

42.     A payroll audit of Metropolitan's payroll records was conducted for the period of January 2016 through July 2017 and revealed that the Funds were underpaid contributions in the amount of $3,567.05 for that period ("Audit Contributions").

43.     On June 11, 2018, the Funds sent the Defendant a written demand for Audit Contributions in the amount of $3,567.05 and audit fees in the amount of $1,230.00, as well as interest and liquidated damages with respect to the delinquent contributions.

44.     To date, Defendant has failed to pay the Audit Contributions, audit fees, interest, and liquidated damages.

**Count I**
**Delinquent Withdrawal Liability**
**ERISA §§ 502(g)(2), 4301(b); 29 U.S.C. §§ 1132(g)(2), 1451(b)**
**(By NPF Against Both Defendants)**

45.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

46.    NPF has not received any payment of withdrawal liability from Defendants or from any other person or entity on Defendants' behalf.

47.    ERISA § 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A), defines a "default" as "the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure."

48.    Pursuant to ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5), "[i]n the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made."

49.    In the Delinquency Letter, Defendants received the requisite notice from NPF that its first withdrawal liability payment was past due.

50.    Pursuant to ERISA § 4301(b), 29 U.S.C. § 4301(b), a failure by an employer to pay withdrawal liability when due shall be treated in the same manner as delinquent contributions.

51.    Pursuant to ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), and NPF's governing documents, when an employer owes delinquent withdrawal liability to NPF, and NPF files a lawsuit to recover the unpaid withdrawal liability, the employer is liable for the following:

    a.    The unpaid contributions;

    b.    Interest on the delinquent withdrawal liability at the rate of 0.0205% per day, compounded daily;

    c.    An amount equal to the greater of: (i) a second assessment of interest on the delinquent withdrawal liability at the above rate; or (ii) liquidated

damages equal to twenty percent (20%) of the delinquent withdrawal liability owed upon commencement of litigation; and

d.    The attorneys' fees and costs incurred by NPF in pursuing the delinquent amounts, including the attorneys' fees and costs of this action.

52.    NPF seeks relief as specified in the Prayer for Relief.

**Count II**
**Delinquent Contributions**
**ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2)**
**(By All Plaintiffs Against Metropolitan)**

53.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

54.    ERISA § 515, 29 U.S.C. § 1145, provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

55.    Metropolitan has violated ERISA § 515 by failing to pay $3,567.05 in contributions owed to the Funds prior to its withdrawal.

56.    When an employer, such as Metropolitan, fails to timely submit the contractually required remittance reports and contribution payments, and the Funds file a lawsuit to recover the unpaid contributions, ERISA §§ 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2) and 1145, the CBAs, the Trust Documents, and LMRA § 301, 29 U.S.C. § 185, impose liability on the employer for the following:

a.    The unpaid contributions;

b.    Interest on the delinquent contributions at the rate of 0.0233% per day, compounded daily;

    c.      An amount equal to the greater of: (i) a second assessment of interest on the delinquent contributions at the above rate; or (ii) liquidated damages equal to twenty percent (20%) of the delinquent contributions owed upon commencement of litigation; and

    d.      Late fees equal to the greater of fifty dollars ($50.00) or ten percent of the contributions due for each month of contributions paid late (i.e. more than 30 days after the due date), and before any lawsuit is filed;

    e.      Audit fees and costs incurred by the Funds; and

    f.      The attorneys' fees and costs incurred by the Fund in pursuing the delinquent amounts, including the attorneys' fees and costs of this action.

57.      Plaintiffs seek relief as specified in the Prayer for Relief.

## **Prayer for Relief**

**WHEREFORE,** the Funds prays that the Court grants relief as follows:

1.      With respect to Count I, entering judgment against both Defendants, jointly-and-severally, and awarding to NPF all amounts owed due to Metropolitan's withdrawal from NPF, including:

    a.      $451,656.52 in unpaid withdrawal liability; and

    b.      Interest on the unpaid withdrawal liability at the rate of 0.0205% per day, compounded daily from the day that each of the withdrawal liability payments was due in an amount to be proved; and

    c.      An amount equal to the greater of: (i) a second assessment of interest on the delinquent contributions at the above rate; or (ii) liquidated damages

equal to twenty percent (20%) of the delinquent contributions, in an amount to be proved but at least $90,331.30; and

d.      NPF's reasonable attorneys' fees and the costs of this action, including any such fees and costs incurred in the execution of any judgment awarded.

2.      With respect to Count II, entering judgment against Metropolitan, and awarding to the Funds all amounts owed due to Metropolitan's delinquent contributions, including:

a.      Delinquent contributions in the amount of $3,567.05; and

b.      Interest on the unpaid delinquent contributions at the rate of 0.0233% per day, compounded daily from the day that each of the contributions was due in an amount to be proved; and

c.      An amount equal to the greater of: (i) a second assessment of interest on the delinquent contributions at the above rate; or (ii) liquidated damages equal to twenty percent (20%) of the delinquent contributions, in an amount to be proved but at least $720.61; and

d.      Late fees in the amount of at least $445.04; and

e.      Audit costs in the amount of $1,230.00; and

f.      The Funds' reasonable attorneys' fees and the costs of this action, including any such fees and costs incurred in the execution of any judgment awarded.

3.      Granting the Funds such further and other relief as the Court may deem just and proper.

Dated: Washington, DC
January 22, 2019

Respectfully submitted,

*/s/ Richard S. Siegel*
Richard S. Siegel (VA Bar No. 92829)
SLEVIN & HART, P.C.
1625 Massachusetts Avenue N.W., Ste. 450
Washington, DC  20036
(202) 797-8700
(202) 234-8231 (facsimile)
rsiegel@slevinhart.com
*Attorney for Plaintiff*

A copy of this Complaint will be served by certified mail upon the Secretary of Labor and the Secretary of the Treasury, as required by ERISA § 502(h), 29 U.S.C. § 1132(h), and upon the Pension Benefit Guaranty Corporation, as required by ERISA § 4301(g), 29 U.S.C. § 1451(g).

20689339v4